**United States District Court**
**District of Minnesota**

| | |
|---|---|
| **Minnesota Citizens Concerned for Life, Inc.**, **The Taxpayers League of Minnesota**, and **Coastal Travel Enterprises, LLC**,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>**Lori Swanson**, Minnesota Attorney General, in her official capacity; **Bob Milbert, John Scanlon**, **Terri Ashmore**, **Hilda Bettermann**, **Felicia Boyd**, and **Greg McCullough**, Minnesota Campaign Finance and Public Disclosure Board Members, in their official capacities; **Raymond Krause**, Chief Administrative Law Judge of the Minnesota Office of Administrative Hearings, in his official capacity; **Eric Lipman**, Assistant Chief Administrative Law Judge of the Minnesota Office of Administrative Hearings, in his official capacity; **Manuel Cervantes**, **Beverly Heydinger**, **Richard Luis**, **Steve Mihalchick**, and **Barbara Neilson**, and **Kathleen Sheehy**, Administrative Law Judges of the Minnesota Office of Administrative Hearings, in their official capacities; and **Michael Freeman**, Hennepin County Attorney, in his official capacity,<br><br>*Defendants*. | Civ. No. 10-_____ |

## Verified Complaint for Declaratory and Injunctive Relief

Minnesota Citizens Concerned for Life, Inc., The Taxpayers League of Minnesota, and Coastal Travel Enterprises, LLC ("the Corporations") complain against Defendants ("the State") as follows:

1

# Introduction

1. This a First Amendment[1] free speech and association case in which the Corporations challenge Minnesota's attempt to subvert *Citizens United v. FEC*, 130 S. Ct. 876 (2010) (*Citizens*), *Minnesota Chamber of Commerce v. Gaertner*, No. 10-426, 2010 WL 1838362 (D. Minn. May 7, 2010) (*Chamber*), and *Buckley v. Valeo*, 424 U.S. 1 (1976), which together prohibit the government from imposing certain restrictions on the speech of corporations and associations. Specifically, the Corporations challenge:

    a.  **Minnesota Statutes sections 10A.12(1), 10A.12(1a), 211B.15(3)**, which ban corporate general-fund independent expenditures;

    b.  **Minnesota Statutes sections 10A.12(1), 10A.27(13), 211B.15(2)**, which ban corporate general-fund contributions to independent expenditure committees;

    c.  **Minnesota Statutes sections 211B.15(2), (3) and (4)**, which ban corporate contributions and expenditures that are judged by the State as designed to "promote or defeat" a candidate or candidates;

    d.  **Minnesota Statutes section 10A.01(18)**, as authoritatively interpreted by the Minnesota Campaign Finance and Public Disclosure Board, which defines "express advocacy" (and, so also, "independent expenditure") in vague and overbroad terms; and

    e.  **Minnesota Statutes sections 10A.27(13), 211B.15(2), 211B.15(4)**, which ban corporate contributions to candidates and political parties.

---

[1] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

2. *Citizens* held that: (a) the corporate form poses no cognizable corruption interest justifying corporate campaign-finance restrictions, 130 S. Ct. at 909, which it applied in striking down bans on corporate general-fund "independent expenditures"[2] and "electioneering communications"[3]; (b) the option of speaking through political committees ("PACs") inadequately protects groups' free speech and association rights because groups and their PACs are separate legal entities and the PAC-option does not allow groups *themselves* to speak, *id.* at 897; and (c) requiring groups to speak only through a PAC imposes "onerous" burdens and constitutes a "ban" that must be justified by the government under strict scrutiny, which the bans failed, *id.* at 897–98.

3. *Chamber* held unconstitutional, under *Citizens*, two provisions of Minnesota law (Minnesota Statutes sections 211B.15(2) and 211B.15(3), which have since been revised and are now challenged here) that "prohibit[ed] a corporation from either directly or indirectly spending *corporate funds* 'to promote or defeat the candidacy' of an individual for public office." *Chamber*, 2010 WL 1838362, at *1 (emphasis added). This Court in

---

[2] Under constitutional law, *Buckley*, 424 U.S. at 44 & n.52, and federal law, 2 U.S.C. § 431(17), an "independent expenditure" requires explicit words expressly advocating the election or defeat of a clearly identified candidate, i.e., such so-called "magic words" as "vote for" or "elect." Minnesota law likewise defines an "independent expenditure" in terms of express advocacy. Minn. Stat. § 10A.01(18). However, the State has adopted an enforcement position that "express advocacy" may occur even when "magic words" do not. This authoritative interpretation makes Minnesota's definition of "independent expenditure" both overbroad and vague, and is challenged in Count 4.

[3] Minnesota does not regulate "electioneering communications," but under federal law they are essentially targeted broadcast ads clearly identifying candidates within 30- and 60-day periods before primary and general elections. 2 U.S.C. § 434(f)(3).

*Chamber* made clear that it was the expenditure of general "corporate funds" (as opposed to PAC funds) that was at issue in, and protected by, *Citizens*. *See, e.g.*, *id.* at *2 (electioneering-communication ban that was at issue in *Citizens* "prohibited [the plaintiff in *Citizens*] from using *corporate funds*" (emphasis added)).

4. *Buckley* held that PAC burdens may be imposed only on groups "under the control of a candidate or the major purpose of which is the nomination or election of a candidate." 424 U.S. at 79.

5. After *Citizens* and *Chamber*, Minnesota revised its campaign-finance law, purportedly to comply with those decisions. But Minnesota still does precisely what *Citizens* and *Chamber* held that it may *not* do, namely, prohibit the use of *general* corporate treasury funds for political advocacy. Minnesota instead requires the use of special funds (called "political funds") that are *not* general corporate funds. These funds are precisely the PAC-style funds that *Citizens* and *Chamber* held were *not* a sufficient substitute for the corporation speaking with its *own* general, corporate funds.

6. Minnesota unconstitutionally bans corporations from making general-fund independent expenditures. *Compare* Minn. Stat. § 211B.15(3) (corporations making expenditures "to promote or defeat" candidates may make only independent expenditures), *with* § 10A.12(1a) (associations making only independent expenditures may do so only through an "independent expenditure political fund"). Minnesota unconstitutionally requires all associations (including corporations) making only independent expenditures (over $100 annually) to do so through the PAC-option known as an "independent

expenditure political fund." Minn. Stat. § 10A.12(1a). Minnesota unconstitutionally imposes this PAC-status requirement on all associations that make only independent expenditures whether or not they have the major purpose of nominating or electing candidates and despite Minnesota's lack of a constitutionally cognizable interest to compel use of the PAC-option. *See* Count 1.

7. Minnesota unconstitutionally bans corporations from making general-fund contributions to committees that make only independent expenditures, Minn. Stat. § 211B.15(2), despite the holding in *Citizens* that corporate form poses no corruption risk. *See* Count 2.

8. Minnesota unconstitutionally bans corporations from making expenditures for communications that might be deemed by the State as designed "to promote or defeat" candidates "unless the expenditure is an independent expenditure." Minn. Stat. § 211B.15(3). It does so despite *Buckley*'s mandate of precision in the First Amendment area, 424 U.S. at 41 n.48, and the unconstitutional vagueness and overbreadth of Minnesota's statutory language "promote or defeat." It does so despite the fact that the Supreme Court has permitted regulations of federally-defined electioneering communications and independent expenditures only if such regulations do not "suppress political speech on the basis of the speaker's corporate identity." *Citizens*, 130 S. Ct. at 913. If Minnesota may not prohibit express advocacy ("vote for"), *a fortiori* it may not prohibit communications that do not rise to the level of express advocacy. *See* Count 3.

9. Minnesota's defintion of "independent expenditure," Minn. Stat. § 10A.01(18), as authoritatively interpreted by the Minnesota Campaign Finance and Public Disclosure Board, is both vague and overbroad. It is therefore unconstitutional. *See* Count 4.

10. Minnesota unconstitutionally bans corporations from making general-fund contributions to candidates and political parties, Minn. Stat. § 211B.15(2), (4), despite the holding in *Citizens* that corporate form poses no corruption risk. Minnesota unconstitutionally requires that such contributions be done through a PAC-option called a "conduit fund" that is not even controlled by a corporation itself. *See* Count 5.

## Jurisdiction and Venue

11. This Court has jurisdiction over this case arising under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the Constitution of the United States. 28 U.S.C. §§ 1331, 1343(a).

12. Venue is proper because events giving rise to the claim occurred, and Defendants reside, in this District. 28 U.S.C. § 1391(b).

## Parties

13. Plaintiff Minnesota Citizens Concerned for Life, Inc. ("MCCL") is a non-stock, non-profit, Minnesota corporation, with a headquarters address in Minneapolis, Hennepin County, Minnesota.

14. Plaintiff The Taxpayers League of Minnesota ("Taxpayers League") is a non-stock, non-profit, Minnesota corporation, with a headquarters address in St. Paul, Ramsey County, Minnesota.

6

15. Plaintiff Coastal Travel Enterprises, LLC ("Coastal") is a non-stock, for-profit Minnesota limited liability company, with a headquarters address in New Brighton, Ramsey County, Minnesota.

16. As Minnesota Attorney General, Defendant Lori Swanson is required to "appear for the state in all causes in the . . . federal courts wherein the state is directly interested." Minn. Stat. § 8.01.

17. As officers and members of the Minnesota Campaign Finance and Public Disclosure Board ("Board"), Defendants Bob Milbert (Chair), John Scanlon (Vice Chair), Terri Ashmore, Hilda Bettermann, Felicia Boyd, and Greg McCullough have investigative and enforcement powers for Minnesota Statutes Chapter 10A ("Campaign Finance and Public Disclosure"). Minn. Stat. § 10A.02(11).

18. As Administrative Law Judges ("ALJs") of the Minnesota Office of Administrative Hearings, Defendants Raymond Krause (Chief ALJ), Eric Lipman (Assistant Chief ALJ), Manuel Cervantes, Beverly Heydinger, Richard Luis, Steve Mihalchick, Barbara Neilson, and Kathleen Sheehy have power to adjudicate citizen-initiated complaints that allege violations of Minnesota Statutes Chapter 211B ("Fair Campaign Practices"). Minn. Stat. § 211B.32–.36.

19. As Hennepin County Attorney, Michael Freeman has power to prosecute violations of Minnesota Statutes Chapter 211B ("Fair Campaign Practices"), but only after the Office of Administrative Hearings has "finally disposed" of the complaint. Minn. Stat. §§ 211B.16(3), 211B.32(1), 388.051.

20. Defendants are sued in their official capacities.

## Facts

21. Incorporated in 1968, MCCL is Minnesota's oldest and largest pro-life organization, with more than 70,000 member families and 240 chapters located in every corner of the state.

22. MCCL's mission is to secure protections for innocent human life from conception until natural death through effective education, legislation, and political action. It educates its members and the public on issues relating to abortion, infanticide, and euthanasia. It seeks legal protection for unborn children and their mothers, the infirm, the elderly, and otherwise vulnerable people.

23. MCCL is exempt from federal income taxes as a social welfare organization under 26 U.S.C. § 501(c)(4). Organizations under (c)(4) must be "primarily engaged in promoting in some way the common good and general welfare of the people of the community." (26 C.F.R. § 1.501(c)(4)-1.) Further, "The promotion of social welfare does not include direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate for public office." (*Id.*) So, while (c)(4) organizations may engage in some unambiguously campaign related speech, their major purpose can never be the nomination or election of candidates. MCCL is in compliance with this requirement, and will remain so in the future.

24. As soon as possible, but certainly before the 2010 general election, MCCL wants to make independent expenditures and contributions aggregating less than 10% of its total annual disbursements.

25. MCCL spends far less than half its annual disbursements on regulable election-related speech and is not under the control of a candidate. Thus, under *Buckley*'s major-purpose test for imposing PAC-status, *Buckley*, 424 U.S. at 79, MCCL is constitutionally immune from imposed PAC-status. "[T]he permissible scope of political committee regulation is best understood as an empirical judgment as to whether an organization primarily engages in regulable, election-related speech." *N.C. Right to Life v. Leake*, 525 F.3d 274, 287 (4th Cir. 2008). Article XII, paragraph 1, of MCCL's Articles of Incorpora-tion (*see* **Exh. 1**) requires that "[t]he primary activities of this corporation shall never consist of participation or intervention in political campaigns on behalf of or in opposition to any candidate for public office."

26. The prohibitions against certain corporate contributions and expenditures, imposed by Minnesota Statutes section 211B.15 and challenged in this lawsuit, apply to "corporations," which is defined to include nonprofit corporations that carry out activities in Minnesota. Minn. Stat. § 211B.15(1)(2). Section 211B.15 provides an exception to its prohibitions for certain nonprofits that, among other things, have a policy against accepting "significant" union and business-corporation contributions. Minn. Stat. § 211B.15(15).[4] MCCL has no policy against accepting "significant" union and business-

---

[4] The nonprofit corporation exemption provides:

corporation contributions. MCCL is actively soliciting significant contributions from these entities through a fundraising campaign. It is thus unprotected by Minnesota's "[n]onprofit corporation exemption," and therefore the prohibitions in section 211B.15 apply with full force to MCCL.[5]

27. MCCL supports or opposes legislation relating to pro-life issues and advocacy. It supports or opposes candidates for office based on their agreement with MCCL's positions.

28. MCCL plans to endorse a candidate for governor in the November 2010 gubernatorial election. MCCL is considering endorsing candidates for other offices as well.

---

The prohibitions in this section do not apply to a nonprofit corporation that:
    (1) is not organized or operating for the principal purpose of conducting a business;
    (2) has no shareholders or other persons affiliated so as to have a claim on its assets or earnings; and
    (3) was not established by a business corporation or a labor union and has a policy not to accept significant contributions from those entities.
Minn. Stat. § 211B.15(15).

[5] In 1994, the Eighth Circuit held that the language of the nonprofit exemption was unconstitutional as applied to MCCL. *Day v. Holahan*, 34 F.3d 1356, 1365 (8th Cir. 1994). That decision turned on the fact that MCCL pled (and the State did not contest) that, although MCCL accepted corporate contributions, they were not "significant." *Id*. at 1364. The *Day* court recognized that if MCCL's situation changed in the future, it would no longer be able to avail itself of the nonprofit exemption. *Id*. at 1365. Because MCCL's situation *has* now changed—MCCL is now actively soliciting, and expects to receive, significant contributions from corporations and labor unions—MCCL cannot rely on *Day*'s ruling.

29. Taxpayers League is a nonpartisan, nonprofit grassroots taxpayer advocacy organization which fights for lower taxes, limited government, and full empowerment of taxpaying citizens in accordance with constitutional principles.

30. Taxpayers League is exempt from federal income taxes as a social welfare organization under 26 U.S.C. § 501(c)(4). Organizations under (c)(4) must be *primarily* engaged in promoting the common good and general welfare of the people of the community, not *primarily* engaged in campaign-related speech. (*See supra* ¶ 23.) Thus, the major purpose of (c)(4) organizations can never be the nomination or election of candidates. Taxpayers League is in compliance with this requirement, and will remain so in the future. It does not exist for the purpose of nominating or electing candidates, and it does not spend the majority of its disbursements on such activity. In fact, if allowed to engage in campaign-related speech, Taxpayers League will spend no more than 20 percent of its disbursements on such speech.

31. As soon as possible, but certainly before the 2010 general election, Taxpayers League wants to make independent expenditures and contributions aggregating less than 10% of its total annual disbursements.

32. Because Taxpayers League is a nonprofit corporation that carries out activities in Minnesota, the prohibitions imposed by Minnesota Statute section 211B.15, challenged in this lawsuit, apply to it. Minn. Stat. § 211B.15(1)(2).

33. Taxpayers League has no policy against accepting "significant" union and business-corporation contributions. More than twenty-five percent of Taxpayers League's

income in 2009 came from corporate donations.  Taxpayers League is thus unprotected by

Minnesota's "[n]onprofit corporation exemption," Minn. Stat. § 211B.15(15),[6] and

therefore the prohibitions in section 211B.15 apply with full force to Taxpayers League.

34. Taxpayers League spends far less than half its annual disbursements on regulable

election-related speech and is not under the control of a candidate. Further, it is not

organized for the purpose of nominating or electing candidates. Thus, under *Buckley*'s

major-purpose test for imposing PAC-status, *Buckley*, 424 U.S. at 79, Taxpayers League

is constitutionally immune from imposed PAC-status.

35. Coastal is a limited liability company, organized under Minnesota law, for the

purpose of providing retail travel industry services. Coastal has approximately one million

dollars in annual sales revenue, including sales in Minnesota. Coastal is a wholly-owned

subsidiary of Esmay Enterprises, Inc., a corporation organized under Minnesota law.

Esmay Enterprises, Inc. is an S-corporation wholly owned by John Esmay. Coastal spends

far less than half its annual disbursements on regulable election-related speech and is not

under the control of a candidate. Further, it is not organized for the purpose of nominating

or electing candidates. Thus, under *Buckley*'s major-purpose test for imposing PAC-

burdens, *Buckley*, 424 U.S. at 79, Coastal is constitutionally immune from imposed PAC-

status.

---

[6] *See supra* note 4.

12

36. As soon as possible, but certainly before the 2010 general election, Coastal wants to make independent expenditures and contributions aggregating less than 50% of its total annual disbursements.

37. The prohibitions against certain corporate contributions and expenditures, imposed by Minnesota Statutes section 211B.15 and challenged in this lawsuit, apply to "corporations," which is defined to include limited liability companies that do business in Minnesota. Minn. Stat. § 211B.15(1)(3). Coastal is not a nonprofit corporation, and so cannot claim the nonprofit corporate exemption to section 211B.15's prohibitions. Thus, the prohibitions in section 211B.15 apply with full force to Coastal.

38. Minnesota's primary election is on August 10, 2010, and its general election is on November 2, 2010. *See* www.sos.state.mn.us/index.aspx?page=239.

39. As soon as possible, but certainly before the general election, each of the Corporations wants to make general-fund independent expenditures, as defined in Minnesota Statutes sections 10A.01(18) and 211B.15(3), totaling over $100 in a year, expressly advocating for or against clearly identified candidates of their choice. A specific planned example for both MCCL and Coastal is an expenditure of over $100 for a communication expressly advocating the election of Tom Emmer for Governor before the November general election, or advocating for another candidate of their choice if Mr. Emmer is not the nominee after the August 10th primary. A specific planned example for Taxpayers League is an expenditure of over $100 for a communication expressly advocated the

13

election of Paul Gazelka for state senator from District 12, or another candidate of their choice if Mr. Gazelka is not the nominee after the August 10th primary.

40. The Corporations are prohibited from making their planned general-fund independent expenditures. *Compare* Minn. Stat. § 211B.15(3) (corporations making expenditures "to promote or defeat" candidates may make only independent expenditures), *with* § 10A.12(1a) (associations making only independent expenditures may do so only through an "independent expenditure political fund").

41. The Corporations object to Minnesota's (a) unconstitutional imposition of the PAC-option; (b) the onerous independent-expenditure-political-fund requirements; and (c) the penalties for noncompliance. Each of the Corporations would make its planned independent expenditures but for the fact that it is chilled by Minnesota's prohibition on, and penalties for, general-fund corporate independent expenditures.

42. As soon as possible, but certainly before the general election, MCCL wants to make general-fund contributions, as defined in Minnesota Statutes section 10A.01(11), totaling over $100 in a year, to committees making only independent expenditures. A specific planned example for MCCL is a contribution of over $100 before the general election to the Minnesota Chamber of Commerce Independent Expenditure Political Fund.

43. Minnesota bans corporate general-fund contributions to committees making only independent expenditures. Minn. Stat. § 211B.15(2).

44. MCCL objects to this unconstitutional contribution ban and the penalties for noncompliance. It would make its planned contribution but for the fact that it is chilled by Minnesota's prohibition on, and penalties for, such a contribution.

45. As soon as possible, but certainly before the general election, MCCL and Coastal each want to make a general-fund contribution, totaling over $100 in a year, to a political party. A specific planned example for both MCCL and Coastal is a contribution of over $100 before the general election to the Republican Party of Minnesota.

46. Minnesota prohibits corporate general-fund contributions to political parties. Minn. Stat. § 211B.15(2).

47. MCCL and Coastal object to this unconstitutional contribution ban and the penalties for noncompliance. Each would make the planned contribution but for the fact that it is chilled by Minnesota's prohibition on, and penalties for, such a contribution.

48. As soon as possible, but certainly before the general election, the Corporations want to make a general-fund contribution to, and/or coordinate an expenditure with, certain candidates—up to the limit permitted by Minnesota Statutes section 10A.27. A specific example of a contribution that MCCL and Coastal want to make is a contribution to the campaign of Tom Emmer, candidate for Governor, or another candidate of their choice if Mr. Emmer is not the nominee after the primary election on August 10th. A specific example of a contribution that Taxpayers League wants to make is a contribution to the campaign of Paul Gazelka, candidate for state senator from District 12, or another

candidate of their choice if Mr. Gazelka is not the nominee after the primary election on August 10th.

49. Minnesota prohibits corporate general-fund contributions to, and coordinated expenditures with, candidates. Minn. Stat. § 211B.15(2), (4).

50. The Corporations object to this unconstitutional ban on contributions and coordinated expenditures and the penalties for noncompliance. They would each make their planned contribution and/or coordinated expenditure but for the fact that they are chilled by Minnesota's prohibition on, and penalties for, such a contribution and expenditure.

51. If the Corporations make forbidden contributions, they are "subject to a civil penalty of up to four times the amount of the contribution or approved expenditure." Minn. Stat. § 10A.121(2).

52. Labor organizations may form "political funds" under Minnesota Statutes section 10A.12. Through their political funds, labor organizations may contribute to candidates, political committees, or party units, and may decide what contributions to make. Corporations, on the other hand, may *not* make contributions to candidates, political committees, or party units by forming "political funds" under Minnesota Statutes section 10A.12.

53. Although corporations may form "independent expenditure political funds" that make *only* independent expenditures, Minn. Stat. § 10A.01(38), corporations are banned from making contributions *to candidates*, Minn. Stat. § 211B.15(2), (4). It is true that corporations are permitted to form "conduit fund[s]" that may in turn make contributions

16

to candidates.[7] Minn. Stat. § 211B.15(16). But significantly, corporations may not control, in any degree, how the money in conduit funds is spent. Unlike with political funds, the distribution of conduit funds remains in the hands of employee-donors, who must approve any contributions or expenditures by earmarking their contributions "to candidates of the employee's choice." Minn. Stat. § 211B.15(16).

54. Minnesota imposes severe penalties for violating section 211B.15's provisions at issue, with jail and fines for offending individual officers, managers, members, agents, employees, attorneys, and other corporate representatives. Persons convicted may be fined up to $20,000 and imprisoned for up to five years, or both. Minn. Stat. § 211B.15(6). And corporations are subject to fines up to $40,000. In addition to any fines imposed, domestic corporations may be dissolved, while foreign corporations may lose their right to do business in Minnesota. Minn. Stat. § 211B.15(7).

55. Political funds have burdensome and onerous registration, reporting, and record-keeping requirements, including the following PAC-style requirements:

---

[7] *See* **Exh. 2**, Minn. Ethics Comm'n, Op. 6 (1974) (corporations may establish and administer conduit plans so long as the employee making the contribution retains "sole control" over the disposition of the funds); **Exh. 3**, Minn. Campaign Fin.& Pub. Disclosure Bd., Op. 406 (2009) (conduit funds are neither political committees nor political funds); **Exh. 4**, Minn. Campaign Fin.& Pub. Disclosure Bd., Op. 371 (2005) (because Minnesota prohibits corporate contributions to candidates and committees, a corporation may not create a separate segregated fund for the purpose of forming or contributing to a "political fund" if the separate segregated fund includes any corporate contributions).

- **Treasurer**. A political fund must elect or appoint a treasurer, which for practical purposes must be elected or appointed before activity may occur. Minn. Stat. §10A.12(3).

- **Registration**. A political fund is required to register with the Campaign Finance and Public Disclosure Board by filing a "statement of organization," which includes: (1) the name and address of the political fund ; (2) the name and address of supporting associations of political funds; (3) the name and address of the treasurer and any deputy treasurers; and (4) a list of all depositories or safety deposit boxes used. The treasurer must file the statement of organization no later than fourteen days after the political fund has made a contribution, received contributions, or made expenditures in excess of $100, or by the end of the next business day after it has received a loan or contribution that must be reported under Minnesota Statutes section 10A.20(5), whichever is earlier. Minn. Stat. § 10A.14.

- **Record-keeping** for all **contributions**. A political fund must keep an account of (1) the sum of all contributions received, except any donation in kind valued at $20 or less; and (2) the date, amount, name, and address of each source of a contribution in excess of $20. Minn. Stat. § 10A.13(1).

- **Record-keeping** for all **expenditures**. A political fund must keep an account of (1) the date and amount of each expenditure made by the political fund; (2) the date and amount of each "approved expenditure" made on behalf of the political fund; and (3) the date, amount, name, and address of each political committee, political fund, principal campaign committee, or party unit to which contributions in excess of $20

18

have been made. The treasurer must obtain "a receipted bill, stating the particulars," for every expenditure over $100 made by the political fund and for every approved expenditure over $100 made on behalf of the political fund. For expenditures or approved expenditures in lesser amounts (e.g., less than $100), the treasurer must nonetheless obtain a receipted bill, stating the particulars, "if the aggregate amount of lesser expenditures and approved expenditures made to the same individual or association during the same year exceeds $100." Minn. Stat. § 10A.13(1).

- **Maintaining stored records**. All records (e.g., vouchers, checks, bills, invoices, worksheets, and receipts) must be maintained for at least four years. Minn. Stat. § 10A.025(3). A knowing violation of the record-keeping regulations (including the regulations outlined above relating to record-keeping of contributions and expenditures) is a misdemeanor, punishable by imprisonment up to ninety days or a fine up to $1000, or both. Minn. Stat. § 609.03(3).

- **Reports**. A political fund must file reports by each January 31, with additional reports due fifteen days before primaries and ten days before general elections. Reports disclose, among other things, the name (in alphabetical order), address, and employer (or occupation, if self-employed) of every individual or association making contributions aggregating over $100; the sum of all contributions; receipts over $100 not otherwise listed; the sum of all receipts; the name and address of recipients of expenditures aggregating over $100, together with the amount, date, and purpose of each expenditure, and in the case of independent expenditures made in opposition to a

19

candidate, the candidate's name, address, and office sought; the sum of all expendi-

tures; the sum of contributions made by the political fund; the name and address of

entities to whom noncampaign disbursements were made aggregating over $100 in

the year, together with the amount, date, and purpose of noncampaign disbursements;

the sum of all noncampaign disbursements; and the name and address of any non-

profit corporation providing administrative assistance, specifying the aggregate fair

market value of assistance provided. Minn. Stat. § 10A.20(3). Political funds lacking

reportable activity are nonetheless required to file reports to that effect. Minn. Stat.

§ 10A.20 (7).

- **Dissolution**. A political fund may not dissolve until it has disbursed all its assets over

  $100, settled all its debts, and filed a termination report. The termination report must

  include all the information required in periodic reports (that is, all the information

  listed above). Minn. Stat. § 10A.24.

56. The Corporations object to submitting to unconstitutional, burdensome, PAC-

style requirements. They want to make their independent expenditures and contributions,

as recited herein, with general-treasury funds. They do not want to be forced to use a

political fund or conduit fund to engage in political speech. They would make these

expenditures and contributions from their general treasury but for the challenged provi-

sions.

57. In addition to the planned activity recited herein, the Corporations intend to do

materially similar future activity.

58. The Corporations have no adequate remedy at law.

## Count 1
### Minn Stat. §§ 10A.12(1), 10A.12(1a), 211B.15(3)
### Association and Corporate Independent-Expenditure Ban

59. The Corporations re-allege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

60. The Corporations challenge Minnesota Statutes sections **10A.12(1)**[8] and **10A.12(1a)**,[9] which forbid corporations and other associations from making general-fund "independent expenditures" (defined as communications that "expressly advocate the election or defeat of a clearly identified candidate," Minn. Stat. § 10A.01(18)),[10] and

---

[8] Minnesota Statutes section **10A.12(1)** provides (as relevant; emphasis added):

An association other than a political committee or party unit may not . . . make any . . . independent expenditure . . . *unless . . . made from a political fund*.

[9] Minnesota Statutes section **10A.12(1a)** provides (emphasis added):

An association other than a political committee *that makes only independent expenditures* and disbursements permitted under section 10A.121, subdivision 1, *must do so by forming and registering an independent expenditure political fund* if the expenditure is in excess of $100 or by contributing to an existing independent expenditure political committee or political fund.

[10] Minnesota Statutes section 10A.01(18) provides (emphasis added):

"Independent expenditure" means an expenditure *expressly advocating* the election or defeat of a clearly identified candidate, if the expenditure is made without the express or implied consent, authorization, or cooperation of, and not in concert with or at the request or suggestion of, any candidate or any candidate's principal campaign committee or agent. An independent expenditure is not a contribution to that candidate. An independent expenditure does not include the act of announcing a formal public endorsement of a candidate for public office, unless the act is simultaneously accompanied by an expenditure that would otherwise qualify as an independent expenditure under this subdivision.

Minnesota Statutes section **211B.15(3)**,[11] which prohibits corporations from doing any

political advocacy except for independent expenditures, thereby forcing them to use an

"independent expenditure political fund," Minn. Stat. § 10A.01(38) (definition),[12] which

may make only independent expenditures. MCCL challenges Minnesota's concomitant

requirement that all associations use a political fund, or independent expenditure political

fund, for making expenditures constitutionally permitted to the corporation itself (i.e.,

from corporate general funds).

61. *Citizens* held that (a) the corporate form of association created no cognizable

corruption that would justify state restriction of corporate political speech, particularly

independent expenditures (express advocacy); (b) corporations may not be restricted from

making general-fund independent expenditures; and (c) requiring corporations to employ

a PAC-option (e.g., a separate segregated fund) does not allow the corporation itself to

speak and, even if it did, the option is onerously burdensome and inadequate to vindicate

corporations' free speech and association rights under the First Amendment. *Citizens*, 130

---

[11] Minnesota Statutes section **211B.15(3)** provides (emphasis added):
A corporation may not make an expenditure or offer or agree to make an expenditure to *promote or defeat* the candidacy of an individual for nomination, election, or appointment to a political office, *unless the expenditure is an independent expenditure*. For the purpose of this subdivision, "independent expenditure" has the meaning given in section 10A.01, subdivision 18.

[12] Minnesota Statutes section 10A.01(38) provides (emphasis added):
"Independent expenditure political fund" means a political fund that *makes only independent expenditures* and disbursements permitted under section 10A.121, subdivision 1.

S. Ct. at 897–98, 913. The challenged provisions violate these holdings. If a corporation may not be prohibited from making general-fund independent expenditures, *a fortiori* no association may be barred from making general-fund independent expenditures *by being required to use the PAC-option to make independent expenditures*.

62. In *Chamber*, this Court held unconstitutional, under *Citizens*, Minnesota Statutes sections 211B.15(2) and 211B.15(3), which "prohibit[ed] a corporation from either directly or indirectly spending *corporate funds* 'to promote or defeat the candidacy' of an individual for public office." *Chamber*, 2010 WL 1838362, at *1 (emphasis added). This Court made clear that it was the use of general "corporate funds" that was at issue in, and protected by, *Citizens*. *See, e.g.*, *id.* at *2 (electioneering-communication ban at issue in *Citizens* "prohibited [the plaintiff in *Citizens*] from using *corporate funds*" (emphasis added)). Minnesota's post-*Chamber* revision of these provisions has not resolved the constitutional flaws exposed in *Chamber*.

63. *Buckley* held that the only entities subject to imposed PAC-status or PAC-style burdens are groups "under the control of a candidate or the major purpose of which is the nomination or election of a candidate." *Buckley*, 424 U.S. at 79. "[T]he permissible scope of political committee regulation is best understood as an empirical judgment as to whether an organization primarily engages in regulable, election-related speech." *N.C. Right to Life*, 525 F.3d at 287. The challenged provisions violate *Buckley*'s holding.

64. Minnesota's constitutionally permissible solution for requiring that groups lacking *Buckley*'s "major purpose" report their independent expenditures is the one-time

independent-expenditure reports employed in federal election law and designated as the

permissible alternative to PAC-style disclosure in *FEC v. Mass. Citizens for Life*, 479

U.S. 238, 252–53 (1986) (*MCFL*) (plurality) (footnote omitted):

> If it were not incorporated, MCFL's obligations under the Act would be those
> specified by § 434(c), the section that prescribes the duties of "[e]very person
> (other than a political committee)." Section 434(c) provides that any such person
> that during a year makes independent expenditures exceeding $250 must: (1)
> identify all contributors who contribute in a given year over $200 in the aggregate
> in funds *to influence elections*, § 434(c)(1); (2) disclose the name and address of
> *recipients of independent expenditures* exceeding $200 in the aggregate, along
> with an indication of whether the money was used to support or oppose a particu-
> lar candidate, § 434(c)(2)(A); and (3) identify any persons who make contribu-
> tions over $200 that are *earmarked* for the purpose of furthering independent
> expenditures, § 434(c)(2)(C). All unincorporated organizations whose major
> purpose is not campaign advocacy, but who occasionally make independent
> expenditures on behalf of candidates, are subject only to these regulations.

These one-time independent-expenditure reports—not PAC-style disclosure require-

ments—are the less-restrictive means that Minnesota is required to use, under strict

scrutiny, to address any interest it might have in the disclosure of independent expendi-

tures.

65. These challenged provisions are unconstitutional, as applied to the Corporations

and their proposed independent-expenditure activity, and on their face as they apply to all

corporate and associational independent expenditures, because they violate the free

speech and association guarantees of the First Amendment mandate that "Congress shall

make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

## Count 2

### Minn. Stat. §§ 10A.12(1), 10A.27(13), 211B.15(2)
### Ban On Corporate Contributions to Independent-Expenditure Committees

66. The Corporations re-allege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

67. In this Count, MCCL challenges three Minnesota Statutes: section **10A.12(1)**,[13] which forbids corporations and other associations (but not PACs and political parties) from making general-fund "contributions" (disbursements "to candidates, political committees, or party units," *id.*); section **10A.27(13)**,[14] which imposes PAC-style burdens on unregistered associations making contributions; and section **211B.15(2)**,[15] which

---

[13] Minnesota Statutes section **10A.12(1)** provides (as relevant; emphasis added):

An association . . . may not *contribute* more than $100 in aggregate in any one year to candidates, political committees, or party units . . . *unless . . . made from a political fund*.

[14] If by reason of litigation MCCL is permitted to make contributions without registration, it still would be unconstitutionally burdened by Minnesota Statutes section **10A.27(13)(a)**, which imposes PAC-style burdens on unregistered groups making contributions. In short, the provision forbids political committees, funds, parties, and candidates from receiving contributions from unregistered associations unless the association files with the Campaign Finance and Public Disclosure Board a report providing the same PAC-style information in § 10A.20 required of registered groups and then provides the contribution recipient a certified copy of the report. Section **10A.27(13)(b)** provides that unregistered associations may provide such a report to no more than three recipients, after which the group must register. Since MCCL wants to make contributions to a committee, a party, a candidate, and others not specified, it would be forced, in short order, to register as a PAC under this unconstitutional three-strikes provision.

[15] Minnesota Statutes section **211B.15(2)** provides as follows (emphasis added):

A corporation may not make a *contribution . . .* to a *major political party, organization, committee, or individual* to promote or defeat the candidacy

prohibits corporate general-fund contributions to candidates. MCCL challenges the

concomitant requirement that such contributions be done through PAC-style entities.

68. *Citizens* held that associations that choose to incorporate do not thereby pose a

constitutionally cognizable corruption risk warranting special restriction of their activi-

ties. 130 S. Ct. at 899–911. Quid pro quo corruption (e.g., legislative votes for political

favors) is eliminated by contribution limits. *Id.* at 908; *Buckley*, 424 U.S. at 24–27. And

since *independent expenditures* pose no quid pro quo corruption risk, *Citizens*, 130 S. Ct.

at 909–10, it follows that contributions to committees making *only independent expendi-*

*tures* likewise pose no corruption risk and therefore may not be limited. Lower courts

have already held that non-corporate contributions to independent-expenditure PACs may

not be limited since there is no risk of quid-pro-quo corruption. *See SpeechNow.Org v.*

*FEC*, 599 F.3d 686 (D.C. Cir. 2010) (en banc); *EMILY's List v. FEC*, 581 F.3d 1 (D.C.

Cir. 2009); *N.C. Right to Life v. Leake*, 525 F.3d 274 (4th Cir. 2008); *Long Beach Area*

*Chamber of Commerce v. City of Long Beach*, No. 07-55691, 2010 WL 1729710 (9th Cir.

Apr. 30, 2010). And with *Austin*'s corporate-form corruption interest now gone (having

been overruled by *Citizens*), corporate contributions to such PACs must also be unlimited.

*See Thalheimer v. City of San Diego*, No. 09-CV-2862-IEG, 2010 WL 596397, at *6–9

(S.D. Cal. Feb. 16, 2010) (enjoining ban on corporate contributions to independent-

expenditure PACs).

---

of an individual for nomination, election, or appointment to a political
office. . . .

26

69. If MCCL may lawfully make contributions, Minnesota may not impose PAC-status on it for doing so. PAC-status may only be imposed on groups "under the control of a candidate or the major purpose of which is the nomination or election of a candidate." *Buckley*, 424 U.S. at 79. "[T]he permissible scope of political committee regulation is best understood as an empirical judgment as to whether an organization primarily engages in regulable, election-related speech." *Leake*, 525 F.3d at 287. MCCL lacks the requisite major purpose to be subject to imposed PAC-status.

70. These challenged provisions are unconstitutional as applied to MCCL's (and all corporations' and associations') contributions to independent-expenditure committees because they violate First Amendment free speech and association guarantees.

## Count 3
### Minn. Stat. §§ 211B.15(2), (3) and (4)
### Ban on "Promote or Defeat" Contributions and Expenditures

71. The Corporations re-allege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

72. The Corporations challenge Minnesota Statutes sections **211B.15(2)**,[16] **211B.15(3)**,[17] and **211B.15(4)**[18] which unconstitutionally ban corporations from making contribu-

---

[16] Minnesota Statutes section **211B.15(2)** provides as follows (emphasis added):

A corporation *may not make a contribution* . . . to a major political party, organization, committee, or individual *to promote or defeat* the candidacy of an individual for nomination, election, or appointment to a political office. . . .

[17] Minnesota Statutes section **211B.15(3)** provides (emphasis added):

A corporation *may not make an expenditure* or offer or agree to make an expendi-

tions or expenditures that might be deemed by the State as designed "to promote or defeat" candidates. Minnesota does this despite (a) *Buckley*'s mandate of precision in the First Amendment area, 424 U.S. at 41 n.48; (b) the unconstitutional vagueness and overbreadth of Minnesota's language "promote or defeat"; and (c) the fact that the Supreme Court has permitted regulation of federally-defined electioneering communications and independent expenditures only if such regulations do not "suppress political speech on the basis of the speaker's corporate identity." *Citizens*, 130 S. Ct. at 913.

73. Minnesota's proscription on all corporate general-fund political advocacy other than express-advocacy independent expenditures is not alleviated by Minnesota Statutes section 10A.121(1)(2),[19] which allows independent expenditure political *funds* to make non-approved expenditures, because the corporation *itself* is not permitted to make non-independent-expenditure communications.

74. As to the standard for vagueness and overbreadth, *Buckley* held the phrase "'advocating the election' of a candidate," 424 U.S. at 42 (citation omitted), to be unconstitutionally vague and overbroad absent the additional requirement of *explicit*

---

ture to *promote or defeat* the candidacy of an individual for nomination, election, or appointment to a political office . . . .

[18] Minnesota Statutes section **211B.15(4)** provides (as relevant):

A corporation *may not make a contribution* to a candidate . . . or to a committee organized wholly or partly *to promote or defeat* a candidate.

[19] Minnesota Statutes section **10A.121(1)** provides (as relevant; emphasis added):

An independent expenditure political committee or political fund, in addition to making independent expenditures, may . . . (2) *pay for communications that do not constitute* contributions or *approved expenditures* . . . .

28

words *expressly* advocating the candidate's election or defeat, *id.* at 42–44. Measured against this benchmark, Minnesota's phrase "promote or defeat" is clearly unconstitutional.

75. These challenged provisions are unconstitutional as enacted and as applied because they violate First and Fourteenth Amendment prohibitions on vagueness and overbreadth and First Amendment free speech and association guarantees.

## Count 4
### Minn. Stat. § 10A.01(18)
### Independent Expenditure Definition

76. The Corporations re-allege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

77. The Corporations challenge the definition of "independent expenditure" imposed by Minnesota Statutes section **10A.01(18),**[20] as authoritatively interpreted by the Board's Advisory Opinion 398,[21] which states that "when a communication clearly identifies a candidate, *it is not necessary that the communication use specific words of express advocacy,* such as 'vote for,' 'elect,' 'support' or others for it to be for the purpose of influencing the nomination or election of a candidate" (and thus to constitute an independent expenditure). Minn. Campaign Fin.& Pub. Disclosure Bd., Op. 398, at 3 (2008) (AO-398) (emphasis added).

---

[20]  For the full text of this statutory provision, see *supra* note 10.

[21] **Exh. 5**, Minn. Campaign Fin.& Pub. Disclosure Bd., Op. 398 (2008) ("AO-398").

78. This contradicts the Supreme Court's rule in *Buckley* that independent expenditures are those communications, made independently of any candidate, *that contain specific words of express advocacy,* such as "'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' and 'reject.'" 424 U.S. at 44 n.52. In fact, the Supreme Court has repeatedly limited express advocacy to those communications that contain the so-called "magic words" of express advocacy. For instance, *Buckley* clearly said that the express-advocacy test was a test that required "express words of advocacy" (providing the already-mentioned examples). *Buckley*, 424 U.S. at 44 n.52. *MCFL* said that "a finding of 'express advocacy' depended upon the use of language such as 'vote for,' 'elect,' 'support,' etc.," 479 U.S. at 249 (citation omitted). In *McConnell v. FEC*, the Supreme Court repeatedly equated "express advocacy" with "magic words."[22] *McConnell v. FEC*, 540 U.S. 93, 126, 191–93, 217–19. In *FEC v. Wisconsin Right to Life* (*WRTL-II*), all members of the Court equated "express advocacy" with "magic words." *FEC v. Wisconsin Right to Life*, 551 U.S. 449, 474 n.7 (2007) (*WRTL-II*) (opinion of Roberts, C.J., joined by Alito, J.); *id.* at 495 (Scalia, J., joined by Kennedy & Thomas, JJ., concurring in part and concurring in judgment); *id.* at 513 (Souter, J., joined by Stevens, Ginsburg, & Breyer, JJ., dissenting). And even the *Citizens* dissent noted that "[i]f there was ever any significant uncertainty about what counts as the

---

[22] *McConnell*'s "functionally meaningless" statement about the express-advocacy line, *McConnell*, 540 U.S. at 193, did not *eliminate* "express advocacy" as a category of regulated speech requiring "magic words." Rather, *McConnell* used that analysis to *add* regulation of "electioneering communications" to regulation of magic-words express advocacy.

functional equivalent of express advocacy, there has been little doubt about what counts as express advocacy since the 'magic words' test of *Buckley*." *Citizens*, 130 S. Ct. at 935 n.8 (Stevens, J., concurring in part and dissenting in part). *See also Iowa Right to Life Committee v. Williams*, 187 F.3d 963, 969 (8th Cir. 1999) (recognizing the magic-words test for the express advocacy required for IEs).

79. By rejecting the Supreme Court's magic-words test for independent expenditures, the Board imposes IE reporting requirements on substantially more speech than that containing the magic words of express advocacy, which is all it may constitutionally regulate as IEs.[23] It also leaves the Corporations and the public with no certainty as to what constitutes an IE, since the Board's authoritative interpretation is akin to 'we know it when we see it.' This authoritative interpretation renders Minnesota Statutes section **10A.01(18)** unconstitutionally overbroad and vague. *Wash. State Grange v. Wash. State*

---

[23] The Board may be relying on *FEC v. Furgatch*, 807 F.2d 857 (9th Cir. 1987), which held that magic-words were not necessary for express advocacy to occur if, taken in context, the communication advocated the nomination or election of a candidate. However, *only* the Ninth Circuit has held this. Every other Circuit to consider the question, *including the Eighth*, has held that the magic-words test is required for express advocacy. *See Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 664–65 (5th Cir. 2006); *Anderson v. Spear*, 356 F.3d 651, 664 (6th Cir. 2004); *Va. Soc'y for Human Life v. FEC*, 263 F.3d 379, 329 (4th Cir. 2001); *Iowa Right to Life Comm. v. Williams*, 187 F.3d 963, 969 (8th Cir. 1999); *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 506 (7th Cir. 1998); *Faucher v. FEC*, 928 F.2d 468, 470 (1st Cir. 1991); *FEC v. Cent. Long Island Tax Reform*, 616 F.2d 45, 53 (2d Cir. 1980). Moreover, *Furgatch* has been limited by the Ninth Circuit itself, *see Cal. Pro-Life Council v. Getman*, 328 F.3d 1088, 1098 (9th Cir. 2003), and cannot survive *McConnell*, *WRTL-II*, and *Citizens,* as explained in the text above.

*Republican Party*, 552 U.S. 442, 128 S. Ct. 1184, 1191 n.6 (2008); *Hill v. Colorado*, 530

U.S. 703, 732 (2000).

80. This challenged provision, as authoritatively interpreted by the Board, is unconsti-

tutional as applied and on its face because it violates First and Fourteenth Amendment

prohibitions on vagueness and overbreadth and First Amendment free speech and

association guarantees.

## Count 5
### Minn. Stat. §§ 10A.27(13), 211B.15(2), 211B.15(4)
### Ban on Corporate Contributions to Candidates and Political Parties

81. The Corporations re-allege and incorporate by reference all of the allegations

contained in all of the preceding paragraphs.

82. The Corporations challenge Minnesota Statutes section **10A.27(13)**,[24] which

imposes PAC-style burdens on unregistered associations making contributions, and

sections **211B.15(2)**[25] and **211B.15(4)**,[26] which unconstitutionally ban corporate general-

---

[24] For an explanation of what this statutory provision entails, see *supra* note 14.

[25] Minnesota Statutes section **211B.15(2)** provides (as relevant; emphasis added):
*A corporation may not make a contribution* . . . , directly or indirectly, . . .
to a major political party, organization, committee, or individual *to promote
or defeat* the candidacy of an individual . . . .

    For the purpose of this subdivision, "contribution" *includes an expenditure
to promote or defeat the election or nomination of a candidate* to a political office
that is made with the authorization or expressed or implied consent of, or in
cooperation or in concert with, or at the request or suggestion of, a candidate or
committee established to support or oppose a candidate *but does not include an
independent expenditure* authorized by subdivision 3.

[26] Minnesota Statutes section **211B.15(4)** provides (as relevant; emphasis added):
*A corporation may not make a contribution to a candidate* . . . or to a

fund contributions to candidates and political parties ("candidate and party ban"),[27] despite the holding in *Citizens* that corporate form poses no corruption risk. Minnesota unconstitutionally requires that such contributions be done through a PAC-option called a "conduit fund" that is not even controlled by a corporation itself.

83. For the reasons set out in Count 2, *supra*, regarding the unconstitutionality of barring general-fund corporate contributions to IE political committees, barring general-fund corporate contributions to candidates and political parties is likewise unconstitutional.

84. The PACs that *Citizens* rejected as insufficient to speak for a corporation, 130 S. Ct. at 897, were at least under the *control* of a corporation. They were "separate segregated fund[s]" that were "establish[ed], administer[ed], and . . . utilized for political purposes by a corporation." *See* 2 U.S.C. § 441b(b)(2)(C). Minnesota's refusal to allow corporations to control these separate segregated funds known as conduit funds means that the corporation lacks the ability to vindicate its First Amendment free speech and association rights in even the minimal fashion permitted by a federal PAC (i.e., a "separate segregated fund"). No court has approved this and the First Amendment forbids it.

committee organized wholly or partly to promote or defeat a candidate.

[27] Taxpayers League does not challenge the prohibition against contributions to political parties.

33

85. The candidate and party ban also violates the Equal Protection Clause of the Fourteenth Amendment, because it intentionally treats corporations differently than similarly situated organizations and associations—including unincorporated labor unions. These other, similarly situated organizations may employ PAC-like political funds, which the organizations control, to make contributions to candidates and political parties. Corporations, however, are forbidden from doing so. Instead, they must employ conduit funds, which they may *not* control. Rather, control of disbursements from conduit funds remains with the employee-donors to the funds, who must earmark which candidate(s) they want their donation contributed to. Thus, corporations that sponsor conduit funds cannot control the disbursements from their funds, and so cannot make the contributions they want to make. But every other similarly situated organization and association gets to control disbursements from their funds, and so gets to make the contributions they want to make. This treats similarly situated entities in disparate ways. Because the candidate and party ban affects First Amendment rights, it must satisfy strict scrutiny or else it violates the Fourteenth Amendment—that is, it must be narrowly tailored to a compelling state interest. *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 101 (1972). *See also Dallman v. Ritter*, 225 P.3d 610, 634 (Col. 2010) (recognizing that corporations and labor unions are similarly situated for campaign-finance purposes). But the State has no interest, compelling or otherwise, to support the disparate treatment. The candidate and party ban therefore violates the Fourteenth Amendment.

86. The challenged provisions are unconstitutional as applied to the Corporations, and on their face, because they violate First Amendment free speech and association guarantees, as well as Fourteenth Amendment Equal Protection guarantees.

## Prayer for Relief

Wherefore, the Corporations pray for the following relief:

1. Declaratory judgment in the Corporations' favor that each of the challenged provisions is unconstitutional;

2. Preliminary and permanent injunctions enjoining Defendants, all county attorneys, and all successors in office, from enforcing all challenged provisions against the Corporations and their planned activities, and all other entities similarly situated;

3. Costs and attorney fees pursuant to any applicable statute or authority; and

4. Any other relief this Court in its discretion deems just and appropriate.

July 7, 2010                                    Respectfully Submitted,


                                               /s/ James R. Magnuson
James Bopp, Jr., Ind. Bar #2838-84*            James R. Magnuson (Minn. Bar #389084)
    jboppjr@aol.com                                magnuson@mklaw.com
Richard E. Coleson, Ind. Bar #11527-70*        MOHRMAN & KAARDAL, P.A.
    rcoleson@bopplaw.com                        33 South Sixth Street #4100
Joe La Rue, Ohio Bar #80643*                    Minneapolis, MN 55402
    jlarue@bopplaw.com                          Telephone: (612) 341-1074
Kaylan L. Phillips, Okla. Bar #22219*           Facsimile: (612) 341-1076
    kphillips@bopplaw.com                        *Local Counsel for Plaintiff*
BOPP, COLESON & BOSTROM
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
*Lead Counsel for Plaintiff*
    *Pro hac vice application to be filed
    when docket number is available.