# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Minnesota Citizens Concerned for Life, Inc.;          Civil No. 10-2938 (DWF/JSM)
The Taxpayers League of Minnesota;
and Coastal Travel Enterprises, LLC,

          Plaintiffs,

v.                                                    **MEMORANDUM**
                                                      **OPINION AND ORDER**

Lori Swanson, Minnesota Attorney
General, in her official capacity; Bob Milbert,
John Scanlon, Terri Ashmore, Hilda
Bettermann, Felicia Boyd, and Greg
McCullough, Minnesota Campaign Finance
and Public Disclosure Board Members,
in their official capacities; Raymond Krause,
Chief Administrative Law Judge of the Minnesota
Office of Administrative Hearings, in his official capacity;
Eric Lipman, Assistant Chief Administrative
Law Judge of the Minnesota Office of
Administrative Hearings, in his official capacity;
Manuel Cervantes, Beverly Heydinger, Richard Luis,
Steve Mihalchick, Barbara Neilson, and Kathleen
Sheehy, Administrative Law Judges of the Minnesota
Office of Administrative Hearings, in their official
capacities; and Michael Freeman, Hennepin County
Attorney, in his official capacity,

          Defendants.

_____

James R. Magnuson, Esq., and Erik G. Kaardal, Esq., Mohrman & Kaardal, P.A.; and
James Bopp, Jr., Esq., Joseph E. La Rue, Esq., Kaylan L. Phillips, Esq., and Richard E.
Coleson, Esq., Bopp, Coleson & Bostrom, counsel for Plaintiffs.

Alan I. Gilbert, Solicitor General, and John S. Garry, Assistant Attorney General,
Minnesota Attorney General's Office, counsel for Defendants Lori Swanson, Bob
Milbert, John Scanlon, Terri Ashmore, Hilda Bettermann, Felicia Boyd, Greg
McCullough, Raymond Krause, Eric Lipman, Manuel Cervantes, Beverly Heydinger,
Richard Luis, Steve Mihalchick, Barbara Neilson, and Kathleen Sheehy.

Daniel P. Rogan and Beth A. Stack, Assistant Hennepin County Attorneys, Hennepin County Attorney's Office, counsel for Defendant Michael Freeman.

---

## INTRODUCTION

The Supreme Court of the United States recently ruled that the government may not prohibit corporations from making independent expenditures for political speech that expressly advocates for or against the election of candidates for political office. *Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876, 882 (2010).   In response to that ruling, the Minnesota legislature amended Minnesota law, which formerly prohibited corporations from making independent expenditures, to expressly allow for corporate independent expenditures.  Plaintiffs now move for a preliminary injunction striking down Minnesota's recently amended campaign finance laws.[1]

In their Verified Complaint for Declaratory and Injunctive Relief, Plaintiffs challenge several Minnesota statutes that relate to campaign finance and disclosure. Plaintiffs allege that the challenged statutes are unconstitutional because they violate First Amendment free speech and association guarantees as well as Fourteenth Amendment equal protection guarantees.  Specifically, Plaintiffs seek a declaratory judgment that the following statutes are unconstitutional:  Minnesota Statute § 10A.12, subds. 1 and 1a;

---

[1]      Plaintiffs also move to consolidate the hearing on their Motion for Preliminary Injunction with a trial on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.  The Court respectfully denies that motion and presently considers only Plaintiffs' Motion for Preliminary Injunction.

§ 10A.01, subd. 18; § 10A.27, subd. 13; and § 211B.15, subds. 2, 3, and 4.  Plaintiffs also

seek an injunction enjoining the enforcement of the challenged statutes.  For the reasons

discussed below, the Court denies Plaintiffs' Motion for Preliminary Injunction.

## BACKGROUND

### I.      The Parties

Plaintiff Minnesota Citizens Concerned for Life ("MCCL") is a Minnesota non-

profit corporation whose mission is to "secure protections for innocent human life from

conception until natural death through effective education, legislation, and political

action."  (Compl. ¶¶ 13, 22.)  The Taxpayers League of Minnesota ("Taxpayers League")

is a Minnesota non-profit corporation that advocates for "lower taxes, limited

government, and full empowerment of taxpaying citizens in accordance with

constitutional principles."  (*Id*. ¶¶ 14, 29.)  Both MCCL and Taxpayers League state that

they are exempt from federal income taxes as social welfare organizations under

26 U.S.C. § 501(c)(4).  (*Id*. ¶¶ 13-14, 23 & 30.)  Section 501(c)(4) organizations must be

"primarily engaged in promoting in some way the common good and general welfare of

the people of the community"— not including "direct or indirect participation or

intervention in political campaigns on behalf of or in opposition to any candidate for

public office."  26 C.F.R. § 1.501(c)(4).  Coastal Travel Enterprises, LLC ("Coastal

Travel") is a for-profit Minnesota limited liability company in the business of providing

retail travel industry services.  (Compl. ¶¶ 15, 35.)

Defendants include the Minnesota Attorney General, six members of the

Minnesota Campaign Finance and Public Disclosure Board (the "Board"), eight

administrative law judges of the Office of Administrative Hearings ("OAH Judges"), and

the Hennepin County Attorney.

## II.   *Citizens United* **and Related Legal Background**

In January 2010, the United States Supreme Court issued its decision in *Citizens*

*United*.  In *Citizens United*, the Court considered the constitutionality of a federal law that

prohibited corporations from using general treasury funds to make independent

expenditures for speech that directly advocated the election or defeat of a candidate

through any form of media, or from making "electioneering communications."  130 S. Ct.

at 887, 900.[2]  The Supreme Court considered the validity of a portion of a federal law, 2

U.S.C. § 441b, that was amended by the Bipartisan Campaign Reform Act of 2002

("BCRA"), in the context of a challenge brought by a nonprofit corporation that sought to

air a documentary film via video-on-demand that was critical of then-Senator Hillary

Clinton, who was a candidate in the Democratic Party's 2008 Presidential primary

elections.  *Id*. at 887.  Under the challenged federal law, corporations and unions were

barred from using general treasury funds for express advocacy or for electioneering

---

[2]      An "[e]lectioneering communication" is "any [publicly distributed] broadcast,
cable, or satellite communication" that "refers to a clearly identified candidate for Federal
Office" that is made within 30 days of a primary election or 60 days of a general election.
*Id*. at 887 (citing 2 U.S.C. § 434(f)(3)(A) and 11 C.F.R. §100.29(a)(2) (2009)).

communications but were allowed to establish a "separate segregated fund" known as a

political action committee or PAC.  *Id.* at 887.  The segregated fund, or PAC, could only

receive donations from stockholders and employees of the corporation.  *Id.* at 888.

The Supreme Court explained that the law before it in *Citizens United* was an

"outright ban, backed by criminal sanctions" that made it a "felony for all corporations—

including nonprofit advocacy corporations—either to expressly advocate the election or

defeat of candidates or to broadcast electioneering communications within 30 days of a

primary election and 60 days of a general election."  *Id.* at 897.  In a 5-4 decision, the

Supreme Court held that corporations have a First Amendment right to make independent

corporate expenditures to expressly advocate for or against the nomination or election of

a candidate for political office.[3]

After *Citizens United* was decided, the Minnesota Chamber of Commerce filed suit

challenging a Minnesota law that prohibited corporations from directly or indirectly

spending corporate funds "to promote or defeat the candidacy" of an individual running

for public office.  *Chamber of Commerce v. Gaertner*, Civ No. 10-426, 2010 WL

---

[3]      In so holding, the Supreme Court overruled its prior decision in *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990), wherein the Court held that speech could be banned based on the speaker's corporate identity.  The *Citizens United* case also partially overruled the part of its decision in *McConnell v. FEC*, 540 U.S. 93 (2000) that upheld § 441b's restrictions on corporate independent expenditures.  *Citizens United*, 130 S. Ct. at 913.

1838362, at *1-2 (D. Minn. May 7, 2010) ("*Chamber*").[4] Relying on *Citizens United,*
the Court in *Chamber* held that the Minnesota provisions' prohibition on indirect
corporate expenditures is unconstitutional, explaining that "[t]he Supreme Court's
decision in *Citizens United* is unequivocal:  the government may not prohibit
independent and indirect corporate expenditures on political speech." *Chamber*, 2010
WL 1838362, at *4.

## III.   Minnesota Campaign Finance Laws

This lawsuit involves Minnesota Statutes Chapter 10A, the Campaign Finance and
Public Disclosure Act (the "Act") and Chapter 211B, the Fair Campaign Practices Act
(the "FCPA").[5]  The Act is administered by the Board.  Minn. Stat. § 10A.02, subd. 11.
The Board is made up of six members appointed by the Governor with the advice and
consent of three-fifths of the members of both the senate and the house of representatives

---

[4]     The contested statute, at the time, read in part:

Subd. 2. **Prohibited contributions.**
A corporation may not make a contribution . . . directly or indirectly,
of any money . . . to a major political party, organization, committee,
or individual to promote or defeat the candidacy of an individual. . . .

Subd. 3. **Independent expenditures.**
A corporation may not make an independent expenditure . . . to
promote or defeat the candidacy of an individual for nomination,
election, or appointment to a political office.

*Chamber*, 2010 WL 1838362, at *1 (citing Minn. Stat. § 211B.15, subds. 2 & 3).

[5]     Unless otherwise noted, the Court cites to the current version of the Act and the
FCPA, as amended by 2010 Minn. Laws Ch. 397.

of the Minnesota Legislature.  Minn. Stat. § 10A.02, subd. 1.  The Board is responsible

for investigating alleged violations of the Act and may publicly determine whether

probable cause exists to demonstrate that a violation occurred.  In addition, the Board

may impose civil penalties or enter into conciliation agreements.  *Id.*  The Board may

bring an action to recover fees and penalties imposed, or it may seek an injunction to

enforce the Act.  Minn. Stat. § 10A.34, subds. 1a, 2.  The Board also issues advisory

opinions on the requirements of the Act and adopts rules to carry out the purposes of the

Act.  Minn. Stat. § 10A.02, subds. 12-13.

In response to *Citizens United* and *Chamber*, the Minnesota Legislature amended

Minnesota's campaign finance laws.  In particular, changes were made to Chapter 10A so

as to allow for corporate independent expenditures.  The relevant portions of Chapter

10A, as amended, read as follows:

> **When required for independent expenditures.**  An association other than
> a political committee that makes only independent expenditures and
> disbursements permitted under section 10A.121, subdivision 1, must do so
> by forming and registering an independent expenditure political fund if the
> expenditure is in excess of $100 or by contributing to an existing
> independent expenditure political committee or political fund.

Minn. Stat. § 10A.12, subd. 1a.

> **INDEPENDENT EXPENDITURE POLITICAL COMMITTEES AND
> INDEPENDENT EXPENDITURE POLITICAL FUNDS.**
> Subdivision 1.  **Permitted disbursements.**  An independent expenditure
> political committee or an independent expenditure political fund, in addition
> to making independent expenditures, may:
>  . . .

(3) make contributions to other independent expenditure political
committees or independent expenditure political funds.

Minn. Stat. § 10A.121, subd. 1.[6]  Minnesota law provides that the independent

expenditure committee or political fund that receives corporate contributions is

responsible for making legally required disclosures.  Minn. Stat. § 10A.27, subds. 14-16.

Chapter 10A, as amended, thus allows two avenues for a corporation to make an

independent expenditure.  First, a corporation can contribute to an existing independent

expenditure committee or fund.[7]  A business corporation may donate its own corporate

money to an existing independent expenditure committee or fund without providing any

information beyond its name and address.  (Aff. of Gary Goldsmith ("Goldsmith Aff.") at

¶ 7.)  If the business entity solicits and receives contributions beyond its general treasury

revenue for independent expenditures, it must disclose the source of the contributions.

(*Id*. ¶ 15.)  If the donor corporation is a non-profit and has donated $5,000.00 or more to

independent expenditure funds or committees in a year, then it must disclose information

about the underlying sources of money.  (*Id*. ¶ 8.)  The purpose of this disclosure

requirement is to provide the public with information about the actual sources of money

---

[6]    If the "major purpose" of the corporation is to influence the nomination or election
of a candidate for office, then the corporation must register a PAC.  Minn. Stat. § 10A.01,
subd. 27.

[7]    An "independent expenditure political fund" is "a political fund that makes only
independent expenditures and disbursements permitted under section 10A.121, subd. 1."
Minn. Stat. § 10A.01, subd. 18.  A "'political fund' is defined as "an accumulation of
dues or voluntary contributions by an association other than a political committee . . ."

(Footnote Continued on Next Page)

used in independent expenditures.  (*Id*.)  Unlike a corporation using general treasury

funds, a non-profit does not have business income and disclosing the name of the non-

profit would not provide information about who actually paid for the independent

expenditure.  (*Id*.)

Second, a corporation may form its own independent expenditure fund or account.

Minn. Stat. § 10A.12, subd. 1a.  In such a case, the operations of the fund are controlled

by the corporation.  (Goldsmith Aff. ¶ 9 and Ex. B at 1.)  If the created fund only uses

general treasury money, then it need not have a bank account separate from the

corporation's existing accounts.  (*Id*.)  Instead, the corporation can use an internal

bookkeeping device, such as a spreadsheet, to facilitate the tracking of funds for

disclosure purposes.  (*Id*.)

If a corporation chooses to make independent expenditures through the creation of

its own political fund or account, the corporation must register the political fund with the

Board within fourteen days.  Minn. Stat. § 10A.14, subd. 1.  This requires the corporation

to complete a two-page registration statement.  (Goldsmith Aff. ¶ 10.)  The statement

must include the name and address of the committee or fund; the name and address of the

chair if the registration is for a political committee; the name and address of any

supporting association; the name and address of the treasurer and any deputy treasurers;

and a listing of all depositories.  Minn. Stat. § 10A.14, subd. 2.

---

(Footnote Continued From Previous Page)
Minn. Stat. § 10A.01, subd. 28.

There are certain statutory provisions that pertain to political funds.  For example, the corporation creating the political fund must elect or appoint a treasurer.  Minn. Stat. § 10A.12, subd. 3.  The treasurer can be the existing corporate treasurer or some other individual.  The fund must file five reports during a general-election year and one report during a non-general-election year.  Minn. Stat. § 10A.20.   The report must disclose the amount of liquid assets at the beginning of a reporting period; the name and address of each individual or association whose contributions within the year exceed $100; the amount and date of such contributions; the sum of contributions during the reporting period; each loan made or received that exceeds $100; the name and address of the lender; receipts over $100 during the reporting period not otherwise listed; the sum of those receipts; the name and address of each individual or association to whom the reporting entity made expenditures within the year exceeding $100; the sum of all expenditures made by the reporting entity during the reporting period; the name and address of each political committee, political fund, principal campaign committee, or party unit to which contributions in excess of $100 were made; the sum of all contributions; the amount and nature of any advance of credit incurred; the name and address of each individual or association to whom noncampaign disbursements have been made that aggregate in excess of $100 and the purpose of each noncampaign disbursement; the sum of all noncampaign disbursements; and the name and address of a nonprofit corporation that provides administrative assistance to the political committee or political fund.  Minn. Stat. § 10A.20.

The treasurer of a political fund must also keep certain records and make them available for an audit.  Minn. Stat. § 10A.13.  Finally, if a corporation wants to terminate a political fund, it must settle its debts and dispose of assets in excess of $100 and file a termination report with the Board:

> A political committee, political fund, principal campaign committee, or party unit may not dissolve until it has settled all of its debts and disposed of all its assets in excess of $100 and filed a termination report. "Assets" include credit balances at vendors and physical assets such as computers and postage stamps.  Physical assets must be listed at their fair market value. The termination report may be made at any time and must include all information required in periodic reports.

Minn. Stat. § 10A.24.

Chapter 211B regulates campaign practices and applies to all federal, state and local candidates, except candidates for President and Vice-President of the United States.  Minn. Stat. § 211B.01, subd. 3.  Violations are subject to criminal liability and are prosecuted by county attorneys.  Minn. Stat. §§ 211B.15, subd. 6; 211B.16, subd. 3.  In addition, a citizen may file a complaint with the Office of Administrative Hearings for a civil adjudication of the alleged violation.  Minn. Stat. § 211B.32.

Chapter 211B was also amended after *Citizens United*.  It now specifically provides that corporations can make independent expenditures, as defined in Minnesota Statute § 10A.  Minn. Stat. § 211B.15, subds. 2-3 provides:

> Subd. 2. **Prohibited contributions.** A corporation may not make a contribution or offer or agree to make a contribution, directly or indirectly, of any money, property, free service of its officers, employees, or members, or thing of monetary value to a major political party, organization, committee, or individual to promote or defeat the

candidacy of an individual for nomination, election, or appointment to a political office.  For the purpose of this subdivision, "contribution" includes an expenditure to promote or defeat the election or nomination of a candidate to a political office that is made with the authorization or expressed or implied consent of, or in cooperation or in concert with, or at the request or suggestion of, a candidate or committee established to support or oppose a candidate *but does not include an independent expenditure authorized by subdivision 3*.

Subd. 3. **Independent expenditures.** A corporation may not make an expenditure or offer or agree to make an expenditure to promote or defeat the candidacy of an individual for nomination, election, or appointment to a political office, *unless the expenditure is an independent expenditure*.  For the purpose of this subdivision, "independent expenditure" has the meaning given in section 10A.01, subdivision 18.[8]

Minn. Stat. § 211B.15, subds. 2, 3 (emphasis added).

## IV.   Plaintiffs' Allegations

Plaintiffs want to make independent expenditures in excess of $100 a year that expressly advocate for or against political candidates running in the general election on

---

[8]     Minn. Stat. § 10A.01, subd. 18 reads:

"Independent expenditure" means an expenditure expressly advocating the election or defeat of a clearly identified candidate, if the expenditure is made without the express or implied consent, authorization, or cooperation of, and not in concert with or at the request or suggestion of, any candidate or any candidate's principal campaign committee or agent.  An independent expenditure is not a contribution to that candidate.  An independent expenditure does not include the act of announcing a formal public endorsement of a candidate for public office, unless the act is simultaneously accompanied by an expenditure that would otherwise qualify as an independent expenditure under this subdivision.

November 2, 2010.[9]  (Compl. ¶ 39.)  In addition, MCCL wants to make general-fund

contributions totaling more than $100 a year to committees that make only independent

expenditures, such as the Minnesota Chamber of Commerce Independent Expenditure

Political Fund.  (*Id.* ¶ 42.)  MCCL and Coastal each want to make a general-fund

contribution to the Republican Party of Minnesota, and all Plaintiffs want to make

general-fund contributions to particular political candidates.  (*Id.* ¶¶ 45, 48.)

Plaintiffs assert three causes of action against Defendants.[10]  In Count One,

Plaintiffs assert that Minnesota law related to corporate independent expenditures is

unconstitutional because it prohibits corporate general-fund independent expenditures.  In

Count Four, Plaintiffs assert that Minnesota's interpretation of independent expenditure is

unconstitutional as a matter of law because it is impermissibly broad.  In Count Five,

Plaintiffs contend that Minnesota's ban on corporate general-fund direct contributions to

candidates and political parties is unconstitutional.

## DISCUSSION

### I.    Proper Defendants

Attorney General Swanson and the OAH Judges contend that they are not proper

defendants in this action and that all claims against them should be dismissed.  In

---

[9]      For example, MCCL and Coastal Travel each plan to make an expenditure of over
$100 for a communication expressly advocating the election of Tom Emmer for
Governor, and the Taxpayers League plans to make an expenditure for a communication
expressly advocating the election of a candidate for state senator.  (Compl. ¶ 39.)

[10]     In their reply, Plaintiffs note that they abandon Counts 2 and 3 of their Complaint.

particular, these Defendants assert that only state officials who are responsible for enforcing allegedly unconstitutional state legislation may be sued in federal court and that Plaintiffs do not allege that either the Attorney General or the OAH Judges enforce the provisions challenged in this action.

The Eleventh Amendment immunizes states from suits filed against them without their consent. The Supreme Court has construed the Eleventh Amendment, which by its express terms applies only to actions against states by citizens of other states, to also bar suits in federal court against a state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). The immunity afforded a state in federal court extends to agencies of the state. *Florida Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981). An exception to Eleventh Amendment immunity permits suits in federal court against state officials alleged to have violated federal law where the relief sought is only injunctive. *Ex Parte Young*, 209 U.S. 123, 155-58 (1908). However, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of that act. . . ." *Id*. at 157. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *See Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (quotation omitted); *see also Okpaboli v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001). "The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the

14

constitutionality of a state statute.  Nor is the mere fact that an attorney general has a duty to prosecute all actions in which a state is interested enough to make him a proper defendant in every such action."  *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979).

Here, Plaintiffs allege that the Attorney General is required under Minnesota law to "appear for the state in all causes in the . . . federal courts wherein the state is directly interested."  (Compl. ¶ 16.)  In addition, Plaintiffs allege that the OAH Judges "have power to adjudicate citizen-initiated complaints that allege violations of [Chapter] 211B."  (Compl. ¶ 18.)  While it appears to the Court at this preliminary stage that the Attorney General and the OAH Judges are likely immune from this suit under the Eleventh Amendment, the Court declines to determine the issue of immunity before it is fully briefed on a properly filed motion to dismiss.

## II.    Preliminary Injunction

Under Eighth Circuit precedent, the Court considers four factors when determining whether a preliminary injunction should issue: (1) the probability of success on the merits; (2) the threat that the movant will suffer irreparable harm absent the restraining order; (3) the balance of harms; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  The first *Dataphase* factor normally requires that the movant establish a substantial probability of success on the merits of its claim.  *Dataphase*, 640 F.2d at 114.  However, because Plaintiffs seek to invalidate a state statute, they must meet a more rigorous standard by showing that they are "likely to prevail" on the merits.  *Planned Parenthood of Minn., N.D., S.D. v. Rounds*, 530 F.3d

15

724, 730-33 (8th Cir. 2008).  The party requesting the injunctive relief bears the "complete burden" of proving that an injunction should be granted.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

### A.     Likelihood of Success on the Merits

#### 1.     Count One

Plaintiffs contend that they are likely to succeed on the merits of Count One because together Minnesota Statutes sections 10A.12 and 211B.15 unconstitutionally ban corporations from making general-fund independent expenditures.  In particular, Plaintiffs contend that the statutes subvert the holdings of *Citizens United* and *Chamber*, fail constitutional scrutiny for lack of justification, and impermissibly impose PAC-like burdens on groups not subject to PAC requirements

##### a.     *Independent Expenditures Under Minnesota Law*

After *Citizens United* and *Chamber*, Minnesota law was amended and now expressly permits Plaintiffs to make independent expenditures.  Plaintiffs are permitted to do so either by contributing to an independent expenditure committee or fund or by establishing a fund for the purpose of making independent expenditures.  Minn. Stat. § 10A.12, subd. 1a; § 211B.15, subds 2, 3.  Plaintiffs argue that after *Citizens United*, corporations may not be required to employ a PAC for independent expenditures and that the independent expenditure fund allowed under Minnesota law is a separate, segregated fund that essentially acts as a PAC.  Plaintiffs argue that they are not able to speak through an independent expenditure fund because it is separate from the corporation or

16

organization; and in particular that because Minnesota law requires corporations to report

contribution and expenditure transactions through an independent expenditure fund, the

corporation is effectively banned from making independent expenditures through its

general treasury fund.  In support, Plaintiffs cite to the discussion in *Citizens United*

related to the issue of whether a corporation can "speak" through a donation to an existing

PAC.

In *Citizens United*, the Supreme Court held that "[s]ection 441b is a ban on

corporate speech notwithstanding the fact that a PAC created by a corporation can still

speak" and noted that "[a] PAC is a separate association from the corporation."  130 S.

Ct. at 897.   The Supreme Court went on to explain:

> Even if a PAC could somehow allow a corporation to speak—and it does
> not—the option to form PACs does not alleviate the First Amendment
> problems with § 441b.  PACs are burdensome alternatives; they are
> expensive to administer and subject to extensive regulations.

130 S. Ct. at 897.  Plaintiffs argue that the independent expenditure fund provided for in

section 10A is, in essence, a segregated PAC and therefore does not satisfy the First

Amendment.

The Court concludes that Plaintiffs are unlikely to succeed in showing that the

independent expenditure funds provided for under Minnesota law constitute separate,

segregated "PAC-style" accounts.   Indeed, the federal PACs discussed in *Citizens United*

are significantly different from the political independent expenditure funds at issue here.

 In *Citizens United*, the Supreme Court focused on the fact that PACs are separate from

17

the corporations.  *See Citizens United*, 130 S. Ct. at 897.  Moreover, under the PAC law

examined in *Citizens United*, a corporation is prohibited from making general treasury

fund contributions to PACs for PAC expenditures.  *Id.* at 881-82 (citing 2 U.S.C.

§ 441b(b)(2)).  A federal PAC created by a corporation cannot use general corporate

funds to fund PAC expenditures; rather, federal PACs can only receive a limited amount

of contributions from individuals (such as employees of a corporation) and can only make

limited contributions to certain candidates.  *Id.*  The same is not true of the funds allowed

under Minnesota law.

Here, Defendants have submitted sufficient support to establish that independent

expenditure funds under Minnesota law need not be separate from the corporation.  For

example, Defendants have submitted evidence that, unlike a PAC, a political fund created

by a corporation remains under the control of the corporation.  (Goldsmith Aff. ¶ 9, Ex B

at 1.)  Significantly, the fund can consist of a corporate account created for the purpose of

the corporation making independent expenditures or a simple bookkeeping device, such

as a spreadsheet.  *Id.*  In addition, Minnesota law allows corporations to make general

treasury fund contributions to independent expenditure funds and does not limit from

whom funds are solicited, the amount a corporation can contribute to independent

expenditure funds, or the amount that may be spent on independent expenditure funds.  In

addition, while a PAC cannot operate until it is established under federal law, *Citizens

United*, 130 S. Ct. at 899, an independent expenditure fund under Minnesota law can

register with the Board *after* the corporation makes an expenditure.  Minn. Stat. § 10A.14.

18

Finally, the reporting requirements for PACs are significantly more extensive than those for political independent expenditure funds under Minnesota law. [11]

Plaintiffs also contend that money placed in a political independent expenditure fund cannot be transferred back to a general fund and that upon dissolution, money in a fund must be spent for acceptable political purposes or given to the state.  Plaintiffs argue that this feature of the political independent expenditure fund law demonstrates that the funds are not in control of the corporation.  In support, Plaintiffs point to five statutes that they assert demonstrate that corporations may not place money in an independent expenditure and then transfer it back to the general fund.  These statutes are:  Minn. Stat. § 10A.12, subd. 2 (prohibiting commingling of the contents of a political fund with other funds or with the personal funds of an officer or member of the fund); Minn. Stat. § 10A.242, subd. 1 (providing that a political fund must be dissolved within 60 days after receiving notice that the fund has become inactive and that the fund's assets must be spent for the purposes authorized by section 211B.12 or liquidated and deposited in the

---

[11]      For example, under federal law governing PACs, a PAC must file semi-annual reports in non-election years and, in an election year, a PAC must file quarterly reports, a year-end report, a pre-primary report, a pre-general election report, and post-general election report if there are contributions or expenditures prior to those elections.  2 U.S.C. § 434(a)(4); 11 C.F.R. §§ 104.5(c)(1), (c)(2).  A PAC must also file reports of any independent expenditures within 48 hours after $10,000 of expenditures made from January 1 to twenty days before the election and within 24 hours after $1,000 of expenditures during the last twenty days before an election.  2 U.S.C. §§ 434 (g); 11 C.F.R. §§ 104.4(b)(2), (c).  In addition, PACs must itemize receipts and disbursements in its reports.  (Goldsmith Aff. ¶ 24, Ex. I.)  In contrast, Minnesota law requires a general summary for far fewer categories.  (*Id*. ¶ 24, Ex. C.)

general account of the state elections campaign fund within that same time period); Minn.

Stat. § 211B.12 (providing that the use of money collected for political purposes is

prohibited unless the use is reasonably related to the conduct of election campaigns or is a

noncampaign disbursement as defined in section 10A.01, subd. 26);  Minn. Stat.

§ 10A.01, subd. 26 (defines "noncampaign disbursement" as including "a payment of

money . . . by a principal campaign committee for any of the following purposes"

including a return of a contribution to the source); and Minn. Stat. § 10A.24 (providing

that a political fund may not dissolve until it has settled all of its debts and disposed of all

its assets in excess of $100 and filed a termination report).

        Plaintiffs assert that the law as provided in the above statutes requires the

independent expenditure fund to dispose of its assets in excess of $100 if the corporation

wishes to dissolve the fund and that the fund may only do so by spending the excess on

defined political purposes or giving the money to the state.  However, after reviewing the

relevant statutes, the Court concludes that Plaintiffs have not demonstrated that they are

likely to succeed in showing that a political independent expenditure fund cannot transfer

funds back to a general fund.  For example, although the law requires that a political fund

dispose of all assets in excess of $100 prior to filing a termination report, Minnesota law

also allows political funds to make certain noncampaign disbursements, including a

payment that is a return of a contribution to the source.  Minn. Stat. § 10A.01, subd. 26.

Plaintiffs have not shown that an unspent corporate contribution to an independent

expenditure would not constitute such a return.

The Court also concludes that the political fund independent expenditures at issue here differ significantly from conduit funds. A "conduit fund" is a fund that is supported by the political contributions of a corporation's employees. Minn. Stat. § 211B.15, subd. 16. The corporation does not control the contributions made from a conduit fund; instead, the control of the conduit fund is with the employee-donors, who approve contributions by earmarking their contributions. *Id.* The political independent expenditure fund allowed for in section 10A is *not* a conduit fund. Instead, as explained above, it is funded and controlled by the corporation.

### b.      *Burdensomeness of Disclosure and Reporting Requirements*

For all of the reasons stated above, the Court concludes that the Minnesota law to which Plaintiffs object does not ban corporate independent expenditures. Instead, Minnesota law explicitly allows for corporate independent expenditures. The law to which Plaintiffs object is, in fact, a disclosure law—a method of requiring corporations desiring to make independent expenditures to disclose their activities. Such laws are permissible under *Citizens United*. *See Citizens United*, 130 S. Ct. at 914 ("Disclaimer and disclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign-related activities' . . . 'and do not prevent anyone from speaking.'") (quotations omitted).[12] The Court is therefore tasked with examining whether the

---

[12]      The Supreme Court upheld the disclaimer and disclosure requirements challenged in *Citizens United*. *Id*. at 914-916. The challenged requirements included an advertisement responsibility disclaimer that must be clearly spoken and displayed for at

(Footnote Continued on Next Page)

disclosure requirements are unconstitutionally burdensome.

Plaintiffs contend that they are likely to succeed on their claim that Minnesota's disclosure requirements are unconstitutionally burdensome. As a threshold matter, Plaintiffs assert that Minnesota's independent expenditure fund law must satisfy strict scrutiny. However, Plaintiffs base this argument on their claim that Minnesota law acts as a *ban* on general-fund corporate and association independent expenditures. As discussed above, the law at issue here is not a ban, but rather a disclosure law. Accordingly, the law will be reviewed under "exacting scrutiny." *See Citizens United*, 130 S. Ct. at 914.[13] This standard "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Id*. (citing *Buckley v. Valeo*, 424 U.S. 1, 64, 66 (1976) and *McConnell*, 540 U.S. at 231-32).

Here, Minnesota law requires registration of a political fund within fourteen days of the initial independent expenditure activity, designation of a treasurer, and various

---

(Footnote Continued From Previous Page)
least four seconds, stating that the communication is not authorized by a candidate and displaying the name and address of the group or person funding the advertisement. *Id*. at 915. Further, any person spending more than $10,000 on electioneering communications in a year must file a disclosure statement. *Id*.

[13]    In *Citizens United*, the Supreme Court explained that section "441b's prohibition on corporate independent expenditures" was a *ban* on speech and subject to "strict scrutiny." 130 S. Ct. at 898. Strict scrutiny requires the Government to establish that such a ban furthers a compelling interest and is narrowly drawn. *Id*. In contrast, the Supreme Court examined BCRA's disclaimer and disclosure provisions, which burden but do not prevent speech, under the less demanding "exacting scrutiny" standard. *Id*. at 914.

reporting and recordkeeping requirements that are more fully described above. Based on the record before the Court, the Court concludes that Plaintiffs have not shown that they are likely to succeed in demonstrating that these requirements would fail to withstand exacting scrutiny and would, therefore, be unconstitutional.

Defendants assert that the challenged law furthers the governmental interests in providing information to voters about the actual sources of money used to fund independent expenditures; disclosing to the public, including corporate shareholders, that the corporation has begun to make, or has dedicated money to make, independent expenditures; and gathering data to enforce substantive campaign finance regulations. These interests have been held to be "sufficiently important." *Citizens United*, 130 S. Ct. at 915 ("the public has an interest in knowing who is speaking about a candidate shortly before an election"); *McConnell*, 540 U.S. at 194-99 (recognizing important state interests, including providing electorate with information and gathering data to enforce electioneering restrictions); *Buckley*, 424 U.S. at 14-15 ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation.").

The Supreme Court in *Citizens United* discussed the governmental interest in requiring disclosure:

> With the advent of the Internet, prompt disclosure of expenditures can provide shareholders and citizens with the information needed to hold corporations and elected officials accountable for their positions and

> supporters.  Shareholders can determine whether their corporation's
> political speech advances the corporation's interest in making profits, and
> citizens can see whether elected officials are "'in the pocket' of so-called
> moneyed interests."  The First Amendment protects political speech; and
> disclosure permits citizens and shareholders to react to the speech of
> corporate entities in a proper way.  This transparency enables the electorate
> to make informed decisions and give proper weight to different speakers
> and messages.

*Citizens United*, 130 S. Ct. at 916 (citation omitted).  The Court concludes that Plaintiffs

are not likely to succeed in showing that the government's interests are not sufficiently

important.

Moreover, the Court concludes that Plaintiffs are not likely to succeed in showing

that the registration, disclosure, recordkeeping, and reporting requirements lack a

substantial relationship with the government's important interests.  First, the registration

requirements disclose information on corporate independent expenditure activity to the

public and facilitate enforcement of reporting and disclosure requirements.  Second, the

treasurer serves as a contact for the Board and is also responsible for complying with the

disclosure and reporting requirements.  Third, accurate disclosure to the public of

information regarding corporate independent expenditures depends on the maintenance

of financial records.  These records also facilitate enforcement of campaign finance laws

and the detection of violations.  Finally, the required reports provide timely disclosure to

voters about sources of election-related spending and give shareholders and citizens

information that facilitates accountability on the part of corporations and candidates.

*See, e.g., Citizens United*, 130 S. Ct. at 914, 916.  There can be little doubt that the

reporting requirements assist the electorate to make informed decisions in the political marketplace, help shareholders determine whether corporate political speech advances the corporation's interests, and allow citizens to determine whether elected officials are "in the pocket" of outside interests. *Id.*

The Court also concludes that Plaintiffs have not demonstrated a likelihood of success in showing that the registration and disclosure requirements are unconstitutionally burdensome. Again, the Court in *Citizens United* explained that "disclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign related activities' and do not prevent anyone from speaking." 130 S. Ct. at 914. The registration and treasurer requirements cannot be said to be onerous. *See, e.g, Alaska Right to Life Comm. v. Miles*, 441 F.3d 773, 789 (9th Cir. 2006) (explaining that registration requirements that require an entity to register *before* it makes an expenditure are "not significantly burdensome"). Moreover, as described above, Minnesota law requires corporations to keep records of independent expenditure activity and to report to the Board. The recordkeeping requirements are not unlike other corporate requirements regarding financial records and statements. Finally, the reporting requirements are not unduly burdensome. *See, e.g., Miles*, 441 F.3d at 791 (holding that reporting requirements are "not particularly onerous" and survive scrutiny). While the requirements undoubtedly place at least some burdens on the corporations affected, the reporting requirements do not limit the amounts of independent expenditures or the ability of a corporation to speak through a political fund. Accordingly, Plaintiffs have

25

not demonstrated that the requirements are burdensome in light of the important

governmental interests the statutes were enacted to preserve.[14]

For all of the above reasons, Plaintiffs have failed to establish a likelihood of

success on Count One.

### 2.      Count Four

In Count Four of their Complaint, Plaintiffs assert that the definition of

"independent expenditure" in Minnesota Statute § 10A, as applied by the Board, is

unconstitutional as a matter of law because it extends beyond "express advocacy" as

described in *Buckley*.   Defendants assert that this claim is not ripe and fails on the merits

under governing case law.

Minnesota Statute § 10A.01, subd. 1 defines "independent expenditure" as:

> [A]n expenditure *expressly advocating* the election or defeat of a clearly
> identified candidate, if the expenditure is made without the express or
> implied consent, authorization, or cooperation of, and not in concert with or
> at the request or suggestion of, any candidate or any candidate's principal

---

[14]     Plaintiffs argue PAC status cannot be imposed on them because they do not have
the "major purpose" of nominating or electing candidates.  Plaintiffs have submitted
supplemental authority supporting this position.  Plaintiffs' focus on whether they have a
"major purpose" of nominating or electing candidates is, however, misplaced for several
reasons.  First, as discussed above, the provisions of Minnesota's independent
expenditure political fund law are significantly different than federal PAC requirements,
and Plaintiffs have failed to support their assertion that "PAC status" is being imposed on
them under Minnesota law.  Second, as discussed above, the constitutionality of
Minnesota's independent expenditure law rests on whether the law is substantially related
to a sufficiently important interest.  Plaintiffs have not demonstrated a likelihood that
Minnesota's law will fail such a test.

campaign committee or agent.  An independent expenditure is not a
contribution to that candidate. . . .

Minn. Stat. § 10A.01, subd. 18 (emphasis added.)  In *Buckley*, the Supreme Court

considered whether a statute limiting expenditures "relative to a clearly identified

candidate" was unconstitutionally vague.  424 U.S. at 40.  The Supreme Court concluded

that in context, the statute permitted, if it did not require, the phrase "relative to a . . .

candidate" to mean "advocating the election or defeat of" a candidate.  *Id*. at 42.  The

Supreme Court concluded that constitutional deficiencies in that statute could only be

avoided by limiting the statute to "communications that include explicit words of

advocacy of election or defeat of a candidate."  *Id*.  These words include, for example,

"vote for," "elect," "support," "vote against," and "defeat."  *Id*. at 44 n.52.  The Supreme

Court has since repeatedly limited express advocacy to "magic words."  *See FEC v. Mass.*

*Citizens For Life, Inc.*, 479 U.S. 238, 249 (1986); *McConnell*, 540 U.S. at 126, 191-93,

217-19.  The Eighth Circuit also explained that "[t]he Supreme Court has made clear that

a finding of 'express advocacy' depends upon the use of language such as 'vote for,'

'elect,' 'support,' etc."  *Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 969

(8th Cir. 1999) (citation omitted).

Plaintiffs concede that the statute, on its face, is constitutional.  (Pls.' Prelim. Inj.

Mem. at 23.)  However, Plaintiffs take issue with the interpretation of "express advocacy"

found in an advisory opinion that reads in part:

> [W]hen a communication clearly identifies a candidate, it is not necessary
> that the communication use specific words of express advocacy, such as

27

> "vote for", "elect", "support" or others for it to be for the purpose of
> influencing the nomination or election of a candidate.  A communication
> that omits the specific words of express advocacy may, nevertheless, be
> found to be for the purpose of influencing . . . the nomination or election of
> a candidate based on an examination of the communication.

(Compl. Ex. 5, Advisory Opinion 398 (2008) ("AO 398") at 3).

Defendants assert that, regardless of the merits of Plaintiffs' contention that

AO 398 erroneously applies the definition of independent expenditure, the Board

superseded its opinion in AO 398 by issuing a subsequent opinion on December 3, 2008.

In this subsequent opinion, the Board stated that "the Board construes § 10A.01, subd. 28

[definition of political fund] to limit its application to associations that expressly advocate

the nomination or election of candidates" and that "[e]xpress advocacy requires use of

specific words such as 'vote for', 'elect', 'defeat' or similar words."  (Goldsmith Aff.

¶ 14, Ex. F at 6-7.)  The Board also noted the Minnesota Supreme Court's decision in

*Minnesota Citizens Concerned for Life, Inc. v. Kelley*, 698 N.W.2d 424 (Minn. 2005).  In

*Kelley*, the Minnesota Supreme Court answered a certified question from the Eighth

Circuit and held that the definition of "political fund" in Minnesota Statute section 10A is

limited to express advocacy as set forth in *Buckley*.  698 N.W.2d at 428-30.

In light of the Board's subsequent opinion and the Minnesota Supreme Court's

decision in *Kelley*, the Court holds that section 10A's political fund provisions do not

apply to expenditures for issue advocacy or advocacy that does not use the "magic words"

constituting express advocacy.[15]  Thus, Plaintiffs have not demonstrated that they are

likely to succeed in their assertion that the definition of "independent expenditure" is

unconstitutionally vague.

For the above reasons, Plaintiffs have failed to establish a likelihood of success on

Count Four.

### 3.     Count Five

In Count Five of their Complaint, MCCL and Coastal Travel allege that the

prohibition in Minnesota law precluding corporations from making direct contributions to

candidates and political parties is unconstitutional.  In particular, MCCL and Coastal

Travel challenge Minnesota Statutes sections 211B.15, subd. 2 and 211B.15, subd. 4,

which ban corporate general-fund contributions to candidates and political parties.

MCCL and Coastal Travel claim that Minnesota law unconstitutionally requires that such

contributions be made through a "conduit fund."  Plaintiffs assert that this statutory

scheme subverts the Supreme Court's holding in *Citizens United*, constitutes

impermissible viewpoint discrimination, cannot survive strict scrutiny, imposes PAC

status on groups not subject to PAC status, and violates the equal protection clause

---

[15]      Defendants assert that Plaintiffs' challenge to the Board's application of
"independent expenditure" rests on a contingent concern that these provisions might be
applied to some unidentified, future issue advocacy in which Plaintiffs may or may not
engage, thus making the claim unripe.  With respect to ripeness, Plaintiffs allege that they
intend to make expenditures for express advocacy.  While the Court has concerns, at this
early stage of litigation, as to whether this claim is ripe, the Court considers the merits.
The Court will consider any future ripeness argument on a motion to dismiss.

because it does not allow corporations to control how their conduit funds make contributions.

Minnesota law prohibits certain corporate campaign contributions. In particular, a corporation may not make a contribution to a major political party, organization, committee, or individual to promote or defeat the candidacy of an individual for nomination or election. *See* Minn. Stat. § 211B.15, subd.2. Under this provision, a "contribution" does *not* include an independent expenditure. *Id.*

The Court disagrees with Plaintiffs' assertion that Minnesota Statute section 211B.15 subverts the Supreme Court's ruling in *Citizens United*. In *Citizens United*, the Supreme Court invalidated a federal ban on corporate independent *expenditures*. The Supreme Court also, however, noted the distinction between independent *expenditures* made on behalf of candidates and direct *contributions* to candidates that was articulated in *Buckley*. In *Buckley*, the Supreme Court recognized a state interest in preventing corruption or the appearance of corruption in elections through campaign finance regulation. *Buckley*, 424 U.S. at 26-27. The Supreme Court discussed the *Buckley* decision in *Citizens United*:

> . . . *Buckley* first upheld . . . limits on direct contributions to candidates. The *Buckley* Court recognized a "sufficiently important" governmental interest in "the prevention of corruption and the appearance of corruption." . . . The *Buckley* Court explained that the potential for *quid pro quo* corruption distinguished direct contributions to candidates from independent expenditures. The Court emphasized that "the independent expenditure ceiling . . . fails to serve any substantial governmental interest in stemming the reality or appearance of corruption in the electoral process," because "[t]he absence of prearrangement and coordination . . .

alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate."

*Citizens United*, 130 S. Ct. at 901-02 (citations omitted).

The Court concludes that the *Citizens United* ruling does not extend so far as to invalidate Minnesota's ban on direct corporate contributions. While the Eighth Circuit has not directly ruled on the reach of *Citizens United*, other circuits have noted that *Citizens United* did not overrule *Buckley*. *See Siefert v. Alexander*, 608 F.3d 974, 988 (7th Cir. 2010) ("*Citizens United*, rather than overruling *Buckley*, noted and reinforced the distinction between independent expenditures on behalf of candidates and direct contributions to candidates."); *Speechnow.org v. FEC*, 599 F.3d 686, 695 (D.C. Cir. 2010) ("Limits on direct contributions to candidates, 'unlike limits on independent expenditures, have been an accepted means to prevent *quid pro quo* corruption.'"). The Court reaches the same decision today and concludes that *Citizens United* did not overrule *Buckley*, but instead reinforced the distinction between independent expenditures and direct corporate contributions.

Plaintiffs also assert that the Supreme Court's decision in *FEC v. Beaumont*, 539 U.S. 146 (2003) should be revisited and overruled in light of *Citizens United*. Even if the Court had the power to overrule Supreme Court precedent, the Court disagrees with Plaintiffs' assertion. In *Beaumont*, the Supreme Court upheld a federal law prohibiting corporate campaign contributions to political candidates and parties. 539 U.S. at 149-63. As explained above, the Supreme Court in *Citizens United* declined to reconsider its

31

precedents involving campaign contributions by corporations. *See* 130 S. Ct. at 909 ("Citizens United has not made direct contributions to candidates, and it has not suggested that the Court should reconsider whether contribution limits should be subjected to rigorous First Amendment scrutiny."). Thus, *Beaumont* remains good law. *See Green Party of Conn. v. Garfield*, Civ. Nos. 09-5099, 09-0609, 2010 WL 2737134, *6 (2d Cir. July 13, 2010) (noting that *Beaumont's* application of the closely drawn standard to contribution limits remains good law); *Thalheimer v. City of San Diego*, Civ. No. 09-2862, 2010 WL 596397, *13-15 (S.D. Cal. Feb. 16, 2010) (explaining that the Supreme Court in *Citizens United* reiterated that contribution limits have been an accepted means to prevent *quid pro quo* corruption). The Court concludes that *Citizens United* neither explicitly nor implicitly overruled *Beaumont*.

Plaintiffs also argue that Minnesota's ban on direct corporate contributions fails on equal protection grounds because it treats corporations differently than similarly situated associations, particularly labor unions. Defendants argue that Plaintiffs cannot show that they are likely to prevail on an equal protection claim because Plaintiffs cannot show substantial similarity between corporations and labor unions under *Austin*. In *Austin*, the Michigan Chamber of Commerce argued that a statute violated the equal protection clause because it banned independent expenditures made by corporations but not those made by labor unions. In denying the equal protection challenge to the law, the Supreme Court explained that there were "crucial differences" between unions and corporations that justified Michigan's decision to exclude labor unions from the scope of the act.

32

*Austin*, 494 U.S. at 666.  While *Citizens United* overturned *Austin* insofar as *Austin* held that speech could be banned based on the speaker's corporate identity, the Supreme Court in *Citizens United* did not address, and therefore did not overrule, the portion of the *Austin* decision that addressed the equal protection clause.  The Court is therefore bound by *Austin* in this regard and concludes that Plaintiffs are not likely to succeed on their equal protection argument here.  The government's interest in limiting both the actuality and the appearance of *quid pro quo* corruption resulting from direct corporate contributions to candidates for political office is alive and well.

The Court also notes that the Minnesota laws at issue do not constitute a complete ban on corporate speech.  While Minnesota law prohibits direct corporate contributions to political candidates, it still allows corporate general-treasury fund contributions to independent expenditures and for individual members of a  corporation to make contributions.  Thus, Minnesota law deprives the public of little or no material information.  Moreover, the law serves an important governmental interest.[16]

---

[16]     Finally, Plaintiffs assert that the ban on direct corporate contributions constitutes viewpoint discrimination because it prohibits the political speech of corporations. Viewpoint discrimination occurs when the government targets speech based on the particular views taken by the speaker.  *See, e.g., Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829-30 (1995).  "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."  *Id.*  The Court concludes that Plaintiffs are not likely to prevail on this claim.  Plaintiffs have made no showing that corporations share a monolithic ideology or specific viewpoint that is being targeted.  *See, e.g., Citizens United*, 130 S. Ct. at 912 ("Corporations, like individuals, do not have monolithic views.").

For the above reasons, Plaintiffs have failed to establish a likelihood of success on Count Five.

**B.      Remaining Dataphase Factors**

Where a duly enacted statute is involved, a likelihood of success on the merits is a threshold showing that the movant must meet. *See Planned Parenthood*, 530 F.3d at 732-33. Because the Court concludes above that Plaintiffs have failed to demonstrate a likelihood of success on any of their claims, the Court need not weigh the remaining *Dataphase* factors. The Court notes, however, that based on the current record, the remaining *Dataphase* factors—the threat that Plaintiffs will suffer irreparable harm absent an injunction, the balance of the harms, and the public interest—would likely weigh in Defendants' favor.

First, Plaintiffs would not be able to establish the threat of irreparable harm because they have failed to establish a likelihood of success on the merits. Moreover, Plaintiffs would not be able to establish that the balance of the harms or the public interest favor the granting of an injunction. *Citizens United* is clear in its meaning. The voting public has an interest in knowing who is speaking about a candidate on the eve of an election and knowing the sources of election-related spending. Such transparency assures that the electorate will be able to make informed decisions and properly evaluate the speakers and their messages. Invalidating the election laws at issue here would likely result in corporations making independent expenditures without any reporting or disclosure on the eve of the upcoming general election on November 2, 2010. This result

34

so close to the election would clearly harm the State, Minnesota voters, and the general public interest.  To conclude otherwise would be contrary to *Citizens United*.

## CONCLUSION

The Court denies Plaintiffs' Motion for Preliminary Injunction.  Because the Court considered only Plaintiffs' Motion for Preliminary Injunction and denied Plaintiffs' Motion to Consolidate, the Court respectfully directs the parties to contact the Chambers of Magistrate Judge Janie S. Mayeron to proceed with a Rule 16 scheduling conference.

For the reasons stated, **IT IS HEREBY ORDERED** that:

1.    Plaintiffs' Motion for Preliminary Injunction (Doc. No. [8]) is **DENIED**.

2.    Plaintiffs' Motion to Consolidate (Doc. No. [5]) is **DENIED**.


Dated:  September 20, 2010             s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge